# AIRCRAFT PURCHASE AGREEMENT
# FOR
## 1984 CESSNA CITATION 650

**THIS AGREEMENT**, including all Exhibits, schedules and attachments, is made and entered into this 5th day of December, 2005, by and between **Jet Management, Inc.**, having an address at 2841 Flightline Avenue, Sanford FL 32773 ("Seller"), and **United Bank Card, Inc. or its nominee**, having an address at 53 Frontage Road, Perryville Corporate Park, Building III, Hampton NJ 08827 ("Buyer").

<u>Preliminary Statement</u>

Seller owns a 1984 Cessna Citation Model 650 aircraft bearing Manufacturer's Serial No. 030 and FAA Registration No, N51EM, together with the engines and items of equipment and avionics set forth on Exhibit A attached to this Agreement and all parts, components and accessories installed upon or within such aircraft and configured as set forth on Exhibit A attached to this Agreement (collectively, the "Aircraft"). Buyer wants to purchase the Aircraft and related records on the terms and conditions set forth in this Agreement and Seller is willing to sell the Aircraft to Buyer on such terms and conditions.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements set forth in this Agreement, and for $10 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound by this Agreement, the parties hereby agree as follows:

**Section 1     Subject Matter of Sale and Purchase.**

1.1     <u>General</u>  On the Closing Date (defined below), Seller will sell and deliver the Aircraft to Buyer at the Delivery Location (specified below), and Buyer will purchase the Aircraft from Seller.  On the Closing Date, (i) the Aircraft will conform to the specifications set forth on Exhibit A attached to this Agreement; (ii) the Aircraft will be airworthy, with a standard Certificate of Airworthiness issued by the Federal Aviation Administration ("FAA") and all systems operating in good order and with no damage history; (iii) Seller will have complied with and performed all mandatory service bulletins and airworthiness directives relating to the Aircraft under Part 91 of the Federal Aviation Regulations ("FARs"); (iv) the Aircraft will be registered with the FAA; (v) Seller will own good and marketable title to the Aircraft, free and clear of all liens and encumbrances and (vi) Seller has the right and power to sell the Aircraft and Seller has received all consents or approvals necessary to sell the Aircraft to Buyer under the terms of this Agreement.

1.2     <u>Equipment</u>  Buyer will verify the engines and items of equipment, avionics, parts, components and accessories included as part of the Aircraft prior to the end of the Inspection Period, all of which will be delivered with the Aircraft on the Closing Date.

1.3     <u>Historical Records</u>  On the Closing Date, Seller will convey to Buyer all of Seller's rights, titles and interests in and to the Flight Manual for the Aircraft approved by the FAA, with all applicable supplements.; all maintenance manuals, avionics wiring diagrams, engine maintenance manuals and parts catalogues, as may be supplied with the Aircraft; and all airframe and engine logbooks and maintenance records for the Aircraft (collectively, the "Historical Records").

1.4     <u>Maintenance Service Plans</u>  The Aircraft is presently enrolled, and on the Closing Date will continue to be enrolled, in its present engine maintenance service plan ( the "MSP").  On the Closing Date, the MSP will be current and Seller will pay all sums owed to the sponsors of the MSP for or relating to any periods prior to the Closing Date.

Seller will transfer the MSP to Buyer on the Closing Date.  Buyer will pay the cost of transferring the MSP to it and Buyer will not be obligated to reimburse Seller for any monies, including unused reserves, previously paid by Seller to the MSP Plans.

     1.5    <u>Purchase Price for Aircraft</u>  The purchase of the Aircraft is $3,200,000, payable as provided in Sections 2.1 and 2.3 below.

**Section 2    Delivery of Aircraft.**

     2.1    <u>Delivery of Aircraft for Pre-Purchase Inspection</u>  Upon confirmation that Buyer has paid the sum of $50,000 (the "Escrow Deposit") to Insured Aircraft Title Services, Inc. (the "Escrow Agent"), Seller will deliver the Aircraft and its Historical Records to the Cessna Service Center in Orlando, Florida (the "Service Center") for the purpose of undergoing a pre-purchase inspection, the nature and extent of which will be specified by Buyer and approved by Seller (as shown on the Service Center Inspection Checklist attached to this Agreement as Exhibit B) prior to delivery of the Aircraft to the Service Center, and a review of the Aircraft's Historical Records.  Buyer will bear the cost of repositioning the Aircraft to the Service Center and the cost of the inspections and the Historical Records review performed on behalf of Buyer.  If Buyer purchases the Aircraft, the parties will equally share the escrow and closing costs and charges of IATS.

     2.2    <u>Inspection and Correction of Discrepancies</u>  During the period commencing on the date that Seller delivers the Aircraft to the Service Center as provided in Section 2.1 above (the "Inspection Period"), Buyer may inspect the Aircraft, Seller's title to the Aircraft, the Historical Records and all records pertaining to any engine or hull maintenance service plans in which the Aircraft is presently enrolled.  Buyer acknowledges that one of the wing pylons on the Aircraft was previously repaired pursuant to an FAA Part 337 authorization and approval by DER.  The Inspection Period will end concurrently with the Service Center issuance of its inspection report.  If the Inspection Period exceeds 10 days, then either party

may terminate this Agreement by written notice to the other party.  If the Aircraft does not conform to the specifications set forth on Exhibit A attached to this Agreement or the condition referred to in Section 1.1, any title defects with respect to Seller's title to the Aircraft are discovered or any airworthiness discrepancies as noted as a result of the inspections described in Section 2.1 above, or the results of the inspections referred to in this Section are otherwise unacceptable to Buyer, Buyer will have the following options:

      A.     Buyer may refuse to accept and purchase the Aircraft and elect to terminate this Agreement by written notice to Seller.

      B.     Buyer may decline to accept and purchase the Aircraft unless Seller, within three business days after the end of the Inspection Period, agrees to correct at its expense the non-conformities to the specifications and any airworthiness discrepancies disclosed by such inspections and/or cure any title defects.  If Buyer declines to accept the Aircraft, Seller will have the option of either (i) leaving the Aircraft at the Service Center (or with Buyer's consent and approval, moving the Aircraft to another FAA 145 repair station, including without limitation Southern Jet Center, Inc. at the Orlando-Sanford International Airport) and, at Seller's sole cost and expense, having the Service Center (or if Buyer consents, another FAA 145 repair station) correct all of the conditions or airworthiness discrepancies causing Buyer to not accept the Aircraft and/or curing any title defects and proceed to close on the sale of the Aircraft upon completion of such corrective work or (ii) notify Buyer in writing that it will not perform all of the corrective work referred to in the foregoing clause (i).  In the event Seller notifies Buyer that it will not perform such corrective work, Buyer will have the option to either (i) purchase the Aircraft "as-is" in accordance with the provisions of this Agreement or (ii) terminate this Agreement by written notice to Seller within two business days.  If Seller elects to perform any corrective work required under this Subsection, the duration of such corrective work will not be extended by any non-airworthiness discrepancy corrective concurrently authorized by Buyer.

C.    If either party elects to terminate this Agreement for any reason under this Section 2.2, Buyer will cause the Escrow Agent to return the Escrow Deposit, and any interest earned thereon, to Buyer, whereupon neither party will have any further obligation to the other under this Agreement except that Buyer will bear the cost of repositioning the Aircraft to Seller's primary base location.

D.    If Buyer elects to accept the Aircraft at or before the end of the Inspection Period, which acceptance will be evidenced by Buyer signing the form of Acceptance Certificate attached to this Agreement as Exhibit C, the Escrow Deposit will become non-refundable, subject to (i) Seller's performing and timely completing any corrective work referred to in Subsection 2.2.B. above and (ii) Section 2.5 below.

2.3    Tender of Aircraft for Delivery and Purchase    The date when Seller has completed any corrective work referred to in Section 2.2 above, if any is required, and the Aircraft conforms to the requirements of Section 1.1 above is referred to in this Agreement as the "Delivery Date." On the Delivery Date, Buyer will specify the Delivery Location for the Aircraft by written notice to Seller. If the Delivery Location is other than the Service Center (or the FAA 145 repair station performing any corrective work on the Aircraft, as the case may be), within three business days after the Delivery Date, Seller will reposition the Aircraft to the Delivery Location. Buyer will reimburse Seller for the cost of repositioning the Aircraft to the Delivery Location. In no event will closing on the sale and purchase of the Aircraft be later than three business days after Seller's delivery of the Aircraft (at Buyer's expense) to the Delivery Location. If the Service Center will not release the Aircraft without payment of the costs of performing the corrective work under Subsection 2.2.B above in order to permit Seller to deliver the Aircraft to the Delivery Location, Buyer may direct the Escrow Agent to transfer sufficient funds to pay for such work to the Service Center (or the FAA 145 repair station, as the case may be) and such payment will be a credit against the purchase price payable to Seller under Subsection 2.4.B.2 below.

2.4    Buyer's Acceptance  On the earlier of (i) the date (the "Closing Date") when the Aircraft is at the Delivery Location in the condition specified in Section 2.3 above or (ii) January 31, 2006, the parties will concurrently do the following:

      A.    Seller's Closing Requirements:

          1.    Seller will deliver to Buyer or Escrow Agent, as may be specified by Buyer, an FAA Bill of Sale (FAA Form 8050-2) for the Aircraft naming Buyer or its nominee as Purchaser.

          2.    Seller will deliver to Buyer a Warranty Bill of Sale, in the form attached to this Agreement as Exhibit D, for the Aircraft and its Historical Records naming Buyer or its nominee as Purchaser.

          3.    Seller will deliver to Buyer or Escrow Agent, as may be specified by Buyer, such releases of security interests or other liens and encumbrances on the Aircraft, sufficient to enable Seller to convey good and marketable title to the Aircraft to Buyer or its nominee, free and clear of all liens and encumbrances.

          4.    Seller will assign to Buyer all of Seller's rights, titles and interests in and to the Historical Records.

          5.    Seller will transfer to Buyer the right to participate in the MSP Plans.

          6.    Seller will deliver to Buyer such other documents and instruments as may be reasonably requested by Buyer in order to effectuate the transfer of the foregoing assets to Buyer.

      B.    Buyer's Closing Requirements

          1.    Buyer will execute a Delivery Acceptance form for the Aircraft to be provided by Seller, acknowledging that the Aircraft conforms to the requirements of this Agreement and that Buyer is accepting the Aircraft.

2.      Buyer will transfer to Escrow Agent the balance of the purchase price specified in Section 1.5 above.

3.      Buyer will cause the Escrow Agent to pay to Seller (i) the Escrow Deposit, and any interest earned thereon, and (ii) the balance of the purchase price specified in Section 1.5 above.

2.5      <u>Failure to Close</u>  If Seller is unable to deliver the Aircraft to the Delivery Location in the same condition as it was when accepted by Buyer on the Delivery Date, then Buyer may terminate this Agreement upon notice to Seller, in which event the Escrow Agent will repay the Escrow Deposit and any interest earned thereon, to Buyer and neither party will have any further obligations or liabilities to the other under this Agreement.  However, if Seller willfully fails to deliver the Aircraft to the Delivery Location or willfully fails to deliver the Aircraft to the Delivery Location in the same condition as it was when accepted by Buyer on the Delivery Date on the Closing Date, then in addition to any other remedies Buyer may have for Seller's default, Buyer may terminate this Agreement upon notice to Seller, the Escrow Agent will repay the Escrow Deposit and any interest earned thereon, to Buyer and Seller will reimburse Buyer for any costs incurred by Buyer in connection with the Aircraft and this Agreement, including without limitation the cost of any inspections, title reports, record reviews and other work performed at Buyer's request in connection with the Aircraft.

**Section 3      Tax and Indemnification Obligations**

3.1      <u>State Taxes</u>  Buyer will be responsible for, and will indemnify and hold Seller harmless from the payment or assessment of any and all tax, related penalties and attorneys' fees that result from the application of the provisions of any State law that provides for State sales tax or any other similar State law at the Delivery Location or the location of ultimate use arising from or out of the sale of the Aircraft to Buyer.

7

3.2    <u>Federal Taxes</u>  Buyer will be responsible for, and will indemnifies and hold Seller harmless from, the payment or assessment of any and all Federal taxes, other than taxes on Seller's income, related penalties and attorneys' fees, including all duties, imposed tariffs or other similar levies applicable to the sale, use or transportation of the Aircraft after acceptance by Buyer.

3.3    <u>Seller's Indemnification Obligations</u>  Seller will indemnify, defend and hold harmless Buyer and its nominee, and their respective officers, directors, agents and representatives, from any and all claims, demands, suits, causes of action, investigations and liabilities of whatever kind and nature arising out of or relating to Seller's ownership, use, operation and maintenance of the Aircraft.

3.4    <u>Buyer's Indemnification Obligations</u>  Buyer will indemnify, defend and hold harmless Seller and its officers, directors, agents and representatives from any and all claims, demands, suits, causes of action, investigations and liabilities of whatever kind and nature arising out of or relating to Buyer's ownership, use, operation and maintenance of the Aircraft.

3.5    <u>Survival of Indemnification Obligations</u>  The indemnification obligations of the parties set forth in this Section 3 will survive delivery and acceptance of the Aircraft by Buyer.

**Section 4     Warranties**

4.1    <u>Title, Liens and Encumbrances</u>  On the Closing Date Seller warrants that (i) it has good and marketable title to the Aircraft; (ii) it has the right and power to sell the Aircraft; (iii) it has received all consents or approvals necessary to sell the Aircraft to Buyer under the terms of this Agreement and (iv) the Aircraft is free and clear of all liens, charges and encumbrances.

8

4.2   **DISCLAIMER OF OTHER WARRANTIES**   EXCEPT FOR THE WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLER DISCLAIMS ALL OTHER WARRANTIES WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING WITOUT LIMITATION WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  ANY WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT COMPRISE SELLER'S ENTIRE RESPONSIBILITY WITH RESPECT TO ANY FAILURE OR DEFECT IN THE AIRCRAFT TO THE EXCLUSION OF ALL OTHER LIABILITY IN TORT (WHETHER FOR NEGLIGENCE OR OTHERWISE) OR IN CONTRACT.  IN NO EVENT WILL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER, OR ANY THIRD PARTY, FOR ANY CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES, OR DAMAGES FOR LOSS OF USE.  EXCEPT FOR BUYER'S NOMINEE, THERE ARE NO THIRD PARTY BENEFICIARIES OF THIS AGREEMENT.

**Section 5      Miscellaneous Provisions**

5.1   <u>Notices</u>  Any notice given under this Agreement must be in writing and sent by certified mail, overnight courier service or facsimile to the receiving party at the address shown below.  A notice will be deemed given when received.  A notice will be deemed received (i) three business days after deposit with the U.S. Postal Service if sent by certified mail; (ii) the next business day if sent by overnight courier service; (iii) the date sent if sent by facsimile if no errors are reported in transmission and the sending party retains a transmission receipt or (iv) upon delivery if personally delivered.

| | |
|---|---|
| Seller's Address: | 2841 Flightline Avenue |
| | Sanford FL 32773 |
| Attention: | Mr. Paul Watkins |
| Seller's fax number: | 407-323-6133 |
| | |
| Buyer's Address: | 53 Frontage Road |
| | Perryville Corporate Park, Building #3 |
| | Hampton NJ 08827 |
| Attention: | Mr. Jared Isaacman |
| Buyer's fax number: | 908-847-0218 |

    5.2    <u>Binding Effect; Assignment</u>  This Agreement inures to the benefit of and is binding upon the parties and their respective successors and assigns.  Neither party may assign or transfer any of its rights or duties, or interests in, this Agreement to any other person or entity without the prior written consent of the other party; provided however, Buyer may assign this Agreement to its nominee without Seller's prior written consent.

    5.3    <u>Scope of Agreement</u>  This Agreement, together with any Exhibits attached to this Agreement, constitutes the entire agreement between the parties with respect to the purchase and sale of the Aircraft and supercedes all prior or contemporaneous agreements or understandings between or by the parties.

    5.4    <u>Modification of Agreement</u>  This Agreement may not be changed or modified except by a written document signed by the parties subsequent to the date of this Agreement.

    5.5    <u>Section Headings</u>  Section headings used in this Agreement are inserted and used for convenience only.  No amplification or limitation of language contained in a particular Section will be implied from the Section heading.  No presumption will exist in favor of or against a party because of the drafting of this Agreement.

    5.6    <u>Governing Law and Forum</u>  This Agreement will be construed and interpreted in accordance with the laws of the State of Florida.  In the event of a dispute between the parties, the parties agree that the United States District Court for the Northern District of Florida will have exclusive jurisdiction over such dispute and each party consents to the jurisdiction of such Court.

5.7   <u>Counterparts</u>  This Agreement may be signed in multiple counterparts, each of which will constitute an original of this Agreement and all of which will constitute one and the same Agreement.

[Remainder of page intentionally left blank.]

The pud... hereby sign this Agreement as of the date stated at the beginning of this Agreement.

SELLER:

JET MANAGEMENT, INC.

By: _____
Name: Paul Watkins
Title: VP Sales

BUYER:

UNITED BANK CARD, INC.

By: _____
Name: JARED ISAACMAN
Title: CEO

12

**EXHIBIT A**

**AIRCRAFT DESCRIPTION**

See attached list

1

# Jet Management, Inc.

## 2841 Flightline Avenue • Sanford, Florida 32773
## Phone (407) 323-7288 • Fax (407) 323-6133

### 1984 Citation 650

**Serial # 030**                                    **Registration: N51EM**

AFTT: 8615          Landings: 7536
Engines: Garrett TFE-731-3 on MSP
LH: TSN 8735  Cycles: 7319
RH: TSN 8980  Cycles: 7365
APU: Sundstrand, Model T62T-40C7A/7A1    TSN: 2687.2      Cycles: 5646

Avionics:
| | |
|---|---|
| SPZ-650 Autopilot | Collins ALT-55 Radar Altimeter |
| Dual Universal UNS-1M FMS/GPS | Sundstrand APU w/ 40 Amp Hr Battery |
| Collins Proline II Control Heads | Sperry TAS/SAT/TAT System |
| Dual Collins VIR-32A Navs | Honeywell KGP-560 EGPWS |
| Dual Collins VHF-22C Comms | BFG TRC497 Skywatch w/ Display |
| Dual Collins ADF-60s | Columbia Avionics RVSM Solution |
| Dual Collins DME-42s | Sperry Primus 400 SL Color |
| Dual Collins TDR-90 Transponders | King KHF-950 HF |
| Dual RMI Indicators | Sundstrand Cockpit Voice Recorder |

Additional Equipment:
| | |
|---|---|
| Fuel Quantity Totalizer | 7 Cabin Chairs (AMP) |
| 76 Cu. Ft. Long Range Oxygen System | Baker Cabin Management |
| Dual EROS Pilot Oxygen Masks | 2 – 6 ½" Video Monitors |
| Pulselite System | Cabin 115VAC 60Hz System |
| Digital Clocks | Aircell Cellular System |
| Molded Entry Door Fairing | Tail Floodlight System |
| Fire Extinguisher and Smoke Detectors | Recognition Lights |
| Dual Main Lead Acid Batteries | Wing Inspection Lights |
| Avtech Cabin Indirect Lighting System | WEMAC boost |
| Flood Cooling | APRs |

Interior:
September 2000.  Nine Pax Seating.  Center Club configuration, two rear forward facing seats,
forward right side two place divan, belted lav.  Seats finished in two-tone tan leather.
Fireblocked, beige headliner, natural grey carpeting, four executive tables.  115 VAC cabin
power sources.  Baker Cabin Entertainment and Management system.  Baker DVD/CD player
with subwoofer.  Baker Jet Map.  Dual 5.4" moveable video monitors.  Six video monitor
locations.  Forward left side custom galley.  Dual mapcos.  Cockpit Jepp chart cases.  Aft lav with
deluxe aft vanity and sink.  New crew seat sheepskins.

Exterior:
August 2000.  Chevron white with charcoal grey.  Turquoise and platinum metallic accent stripes.
Fresh phase 1-5 inspection 9/05.  $225K just spent on aircraft.  CAMP maintenance.

*Specifications Subject to Verification Upon Inspection*

**EXHIBIT B**

**INSPECTION CHECKLIST**

See attached checklist

# Aircraft Survey Customer Agreement

Date: _12/5/_ 5_

Aircraft Model _L_ _0_     Serial # _030_     Unit #: _____

Owner / Operator: _____

Service Order #: _____     Service Center: _____

## Customer Billing Information

Name: _____United Bank Card_____

Address: _____53 Frontage Rd_____

_____Ferryville Corp. Park, Bld III_____

_____Hampton, NJ 08827_____

_____

Cessna Citation Service Centers

Company Phone #:    800-201-0461_____

## Contact Information

Contact Name: ___ *Mary Scates / Jon Kerr* _____

Phone #: _607-724-6562_____860-567-4805_

Fax #: _____607-348-1436_____

## General Information

Thank you for giving us the opportunity to help you evaluate a previously-owned Citation. Because
the condition of the aircraft, engines and equipment can be a sensitive issue during negotiations
between a seller and a prospective buyer, we'd like to make sure you understand the purpose and
limitations of a Cessna "Pre-Purchase" Aircraft Survey, explain what it will cover, and describe how
we will handle certain aspects of the survey process.

Cessna Citation Service Centers

**C. Engine and Systems Operational Checks**

1. Conduct engine run and systems checks per Section II of this document.

(a) Engine performance runs

(b) ACM visual and operation check of cockpit and cabin temperature control (manual and auto, ambient temperature permitting)

(c) Avionics ground operational checks of standard avionics

| | |
|---|---|
| Autopilot | DME |
| Flight Director | Transponders |
| Nav's | Long Range Nav |
| Com's | Radar |
| Audio Panels | |

(d) List non-standard equipment installed

**D. List of Work Requested**

| Item | Service Order # | Estimated Price | Circle One |
|---|---|---|---|
| 1. Standard Aircraft Survey | _____ | $_____ | (Y)  N |
| 2. Fuel Top Off Required | _____ | $_____ | (Y)  N |

Cessna Citation Service Centers

3. Miscellaneous perishables    _____    $_____    (Y)  N

**E. Optional Survey Items Requested**

The following items are requested in addition to the standard Aircraft Survey, and the undersigned understands
that these are not included in the Aircraft Survey Flat Rate Price:

| Item | Service Order # | Estimated Price | Circle One |
|------|-----------------|-----------------|------------|

1. Estimate pricing for
   Corrective Action    _____    $_____    (Y)  N

2. Engine Vibration Survey    _____    $_____    (Y)  N

3. Engine Oil Analysis
   (SOAP)    _____    $_____    (Y)  N

Cessna Citation Service Centers

| Item | Service Order # | Estimated Price | Circle One |
|------|-----------------|-----------------|------------|

4. External window thickness checks
   (other than windshields)           _____        $_____        Y      (N)

   (Interior window thickness checks are not available unless the interior panels are removed.)


5. _____
   Additional Customer        _____        $_____        Y      N
   Requested Item


6. _____
   Additional Customer        _____        $_____        Y      N
   Requested Item


7. _____
   Additional Customer        _____        $_____        Y      N
   Requested Item


8. _____
   Additional Customer        _____        $_____        Y      N
   Requested Item


The undersigned has read, understands, and accepts the terms and conditions of this Aircraft Survey
Agreement as set forth above, including the limitations on Cessna's responsibilities and liabilities hereunder.

| Item | Service Order # | Estimated Price | Circle One |
|------|-----------------|-----------------|------------|

4. External window thickness checks
   (other than windshields)         $_____            Y    N
   (Interior window thickness checks are not available unless the interior panels are removed.)

5. _____
   Additional Customer               $_____            Y    N
   Requested Item

6. _____
   Additional Customer               $_____            Y    N
   Requested Item

7. _____
   Additional Customer               $_____            Y    N
   Requested Item

8. _____
   Additional Customer               $_____            Y    N
   Requested Item

The undersigned has read, understands, and accepts the terms and conditions of this Aircraft Survey Agreement as set forth above, including the limitations on Cessna's responsibilities and liabilities hereunder.

Accepted by Aircraft Survey Customer:

_____    CEO_____    12/5/05
Signature                  Title           Date

Accepted by Current Aircraft Owner of Record:

_____    VP Sales        12/5/05
Signature                  Title           Date

Accepted for the Cessna Aircraft Company:

_____    _____    _____
Signature                  Title              Date

# EXHIBIT C

## ACCEPTANCE CERTIFICATE

See attached form

ACCEPTANCE CERTIFICATE

The undersigned, the Buyer under that certain Aircraft Purchase Agreement dated December ___, 2005 (the "Agreement"), hereby acknowledges acceptance of the Aircraft identified on Exhibit A attached to this Certificate for purposes of Subsection 2.2.B of the Agreement. The undersigned's acceptance of the Aircraft is effective as of this ___ day of December, 2005.

[Name of Buyer]

By:_____
Name:_____
Title:_____

2

**EXHIBIT D**

**WARRANTY BILL OF SALE**

See attached form

# AIRCRAFT BILL OF SALE
Cessna Citation Model 650, S/N 030, FAA Reg. No. N51EM

**THIS BILL OF SALE**, made this ____ day of _____, 2005, by _____, a _____ [corporation] ("Seller") having an office at _____, to _____, a _____ _____, [corporation] ("Purchaser"), having an office at _____.

## WITNESS:

THAT FOR TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Seller hereby bargains, sells, assigns, conveys, transfers and sets over to Purchaser, its successors and assigns, all of Seller's rights, titles and interests in and to (i) the Aircraft and the installed equipment and avionics identified and described on Exhibit A attached hereto (collectively, the "Aircraft"); (ii) the Flight Manual for the Aircraft, with all applicable supplements.; all maintenance manuals, avionics wiring diagrams, engine maintenance manuals and parts catalogues, as may be supplied with the Aircraft, and all airframe and engine logbooks and maintenance records for the Aircraft (collectively, the "Historical Records").

TO HAVE AND HOLD the Aircraft, unto Purchaser, its successors and assigns, forever.

Seller covenants that it has good and marketable title to the Aircraft conveyed hereby and hereby transfers valid title thereto free and clear of any and all encumbrances, liens, charges or defects except those, if any, created by Purchaser. Seller represents and warrants that the Aircraft sold hereby is transferable by Seller's sole act and deed and that all [corporate] or other action required to authorize, approve and validate such transfer has been duly and lawfully taken. Except for the foregoing representations and warranties, SELLER DISCLAIMS ALL OTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE CONDITION OF THE AIRCRAFT, INCLUDING WITHOUT LIMITATION ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. BY ACCEPTING OF THIS AIRCRAFT BILL OF SALE, PURCHASER ACKNOWLEDGES THAT SELLER HAS NOT MADE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE CONDITION OF THE AIRCRAFT EXCEPT FOR THOSE EXPRESSLY SET FORTH ABOVE. THE AIRCRAFT IS HEREBY SOLD "AS IS, WHERE IS."

Seller covenants that from time to time on demand it will execute any and all such further instruments that Purchaser, its successors and assigns may deem necessary, desirable or proper to effect the complete transfer of the Aircraft, or any component thereof or interest therein to Purchaser, its successors and assigns, or better to evidence the right, title and interest of Purchaser, its successors and assigns.

WITNESS the due execution hereof.

**SELLER:**

Attest/Witness: _____

_____

[Secretary]

By:_____
Name:_____
Title:_____

3